Good morning, Your Honor. Renee Maness of the Federal Public Defender's Office, appearing for Mr. Burnett, the petitioner and the appellant. I would like to reserve two minutes for rebuttal. That's fine. This case is before this Court on a fairly narrow issue, which is simply the moodness of Mr. Burnett's claims. Mr. Burnett claims that he was unconstitutionally incarcerated for a period of three years and eight months when the Oregon Board of Parole denied him parole by application of a statute that had been modified in 1993, five years after his conviction, and that this application of the new rule and statute to his case violated his rights under the ex post facto and due process clauses. Those issues were never reached by the District Court. The District Court determined that Mr. Burnett's claims were in fact moot and that no effective relief could be granted to him, because subsequent to his filing of the federal habeas petition, an Oregon court, Judge Patricia Sullivan, had agreed that in fact the application of the Mr. Burnett could not be denied parole under the then applicable Oregon statute. However, subsequent to Mr. Burnett's release on parole, as ordered by Judge Sullivan, he was in fact reincarcerated. It's Mr. Burnett's intention that because of his reincarceration and basically the imposition of what we consider to be a nondeterminant sentence, under this court's rationale and McQuillan, there is in fact effective relief that can be offered him if the District Court agrees that he was unconstitutionally held in incarceration for a period of three years and eight months. Nobody understands that. It seems to me that he might have a claim for damages for being kept unlawfully, if you can establish that. But he's been reincarcerated under a different offense of violation of parole, so he's lawfully in custody now. And as I understand the theory of relief that you're asking for as a remedy for the unconstitutional period of incarceration previously, as you described, he's essentially asking for compensating time off the balance of his sentence. Now, what's the logic of that, since under, I'm not quite sure I fully understand Oregon's sentencing structure, but in effect, he's now back in prison under a regime that's triggered by a new offense, that is parole violation. How can the District Court take off from the balance of what his time in prison is as a compensating sort of remedy? That's what it would craft as a remedy. That's what I'm having a little trouble for. Aren't damages the, wouldn't damages be the proper avenue of relief? Damages as one option of relief are certainly something that Mr. Burnett could pursue. I don't believe it's exactly accurate to say that he is incarcerated on a separate offense, because that is not what the Board imposed. And I also... He violated his parole, so that's why he's back in prison now. The contention was that he violated parole, and that is certainly something which would need to be litigated before the District Court. Well, but you're not challenging that he's back in prison now, and that he, I mean, we don't have before us today the legitimacy of this being back in prison, do we? No, Your Honor. You don't have that. It is inaccurate to state, however, that he is back in prison on a completely separate offense. Well, I qualified that. What I said, he's back because he violated parole. So he's back in prison now for what we have to accept as a legitimate exercise of the state's authority to put him in prison. He's back in prison serving the continuation of the term of imprisonment for his current offense, the offense for which he was denied parole. Right. And how does the fact weigh in terms of his right to get out now, any time earlier on the balance of his sentence that's fixed? And this didn't... Let me finish my question so we're in communication here. I'm trying to understand how the sentencing regime works now, the sentencing parole regime works, now that he has been re-imprisoned for a parole violation. What you want to do, as I understand it, is take off from the balance of his time in prison three years and eight months, essentially, I guess, off the end of the remaining time. And I'm not quite sure I understand how that relates to whatever the discretion and rules are for the parole board in determining, because he's a parole violator, how long he should remain in prison for the rest of his sentence. Do you understand what I'm driving at? Yes, I believe I do, Your Honor. Okay, thank you. The question is, is the current incarceration a result solely of the alleged subsequent offense under parole? Or is the current incarceration somehow part and parcel of the prior incarceration of which a period of three years and eight months we contend was unconstitutional because he was entitled to parole during that period? And I think if you look at the Oregon sentencing statutes, the current incarceration is clearly part and parcel of his prior incarceration. When the board considered the alleged violations of parole, it specifically held, and if you look at the supplemental excerpts of record at pages four and five, that there was no contention that Mr. Burnett had reoffended in the community. They basically decided he could not be handled in the community. That was the basis on which they revoked his current parole. They contended that he had driven around the block twice, looked at young women, attempted to talk to them. He then told his treatment provider, who was required to see that he'd engaged in that behavior. The treatment provider then terminated him from treatment and said, you're engaging in behavior which is what you did before, we're not going to treat you. Which of course kind of begs the question of why is he in treatment if not because he tends to engage in this behavior and he needs to talk about it and he needs some place to get treatment. But they never specifically stated, you have reoffended, you have engaged in further criminal activity, we are revoking your parole. They said, it's our determination, you cannot be treated in the community any longer, we are revoking your parole, we are imposing the precise same sentence that you were under previously, it is now determinate, you will be released in 2013. So it is not a sentence based on a reoffense or on any type of new criminal behavior. It's a sentence based on the board's determination that they just did not want him out in the community. How that impacts the appropriate type of relief that can be provided to Mr. Burnett when the district court makes a determination that he was in fact illegally incarcerated is certainly something that we believe is appropriate to argue before the district court. In Mujahid, this court stated it may not necessarily be a one for one, you were illegally incarcerated an extra day, you get a day off your supervised release. But it is certainly a factor which should be considered when the court decides habeas relief should be granted, you're entitled to some relief because your constitutional rights were in fact violated, and what should that relief be? Can the parole board itself take that into account? We believe the parole board can, and as I pointed out to you in our Rule 28J letter, there is specifically an Oregon Administrative Rule 2550750055, which allows the board to reopen their hearings. So we also believe it's appropriate that if the district court agrees with our analysis there was a period of unconstitutional incarceration, that Mr. Burnett can take that issue also back to the board and ask the board to give him some relief. Why are the federal courts getting into this at this stage? I'm still a little confused. If in fact he had both the option of a damage remedy and an administrative remedy, why are you in the federal court already trying to craft at least the latter out of the federal district court? The administrative remedy would only be available to Mr. Burnett if he could prove some new additional circumstance, and that new additional circumstance would be in fact the district court agreeing that he was unconstitutionally detained for three years and eight months. While we believe that's quite clear, and while we believe that Judge Sullivan's subsequent ruling that he had to be released affirmed the fact that the board had unconstitutionally denied him release before, the state has never agreed with that situation. Their contention is he was properly denied release before. The state acting through the executive, has the state judiciary been presented with the issue as to whether it was unconstitutional? I thought Judge Sullivan did. Judge Sullivan did in the habeas case arising out of the 2000 violation. We're here on the one that the Oregon Supreme Court had got, he lost on that. The one, yes. Yeah, the first one. That's, and that's. So, just so I can sort this out, I'm not trying to be dense, but I just want to understand the posture of the case. You're suggesting that the Sullivan, the second ruling is a basis for concluding the illegal detention. The first detention, however, has not been determined under the Oregon state courts to be illegal. You want to come over to the federal court, get a declaration that all of his incarceration of three years and eight months was unconstitutional, illegal, and therefore demands a remedy, and that the federal district court should create that remedy rather than it being created and dealt with by the parole board and or the Oregon state courts. Correct, Your Honor. Well, we are here on the 1998 denial of parole. The first one. And we believe that there's a period of illegal incarceration for which he is entitled to relief. And does that account for the full three years? Yes, Your Honor, that does. Okay. And we believe Judge Sullivan's analysis will certainly be evidence that the original incarceration was illegal. But given the history of the board of parole, Mr. Burnett does believe he's entitled to an order granting him some relief from the district court. So he is not simply looking for a declaration. He is, in fact, looking for a judgment of relief for the three years. What is the relief that you contend the district court should get? It's our contention under McQuillan that he should be entitled to three years and eight months off his now determinate sentence. Off his determinate sentence. Correct. That is certainly, that will be our argument before the district court. All right. I'll give you a minute to review that. Thank you, Your Honor. Because I could have most of your time. May it please the court, Caroline Alexander for Respondent Robert Lampert. There seems to me a bunch of confusion in this case. And I'd like to go back, answer the court's questions. I freely admit to that. Let me see if I can straighten that out. I'm not sure. I won't promise, but let me try. Mr. Burnett is challenging a 1998 parole board order denying release. Subsequent to that, in 2000, he challenged a different order. The basis of both challenges was, in a sense, sufficiency of the evidence. In other words, the claim was the board didn't have sufficient evidence under the statute, in effect at the time, to deny release on parole. In the 2000 state habeas case, and I might note as well that this court has not yet taken judicial notice of those documents. It's the state's position that, in fact, these documents are irrelevant. It's relevant that Mr. Burnett was released on parole, and that parole was subsequently revoked. The substance of those documents are not relevant. But at any rate, he was released by the state habeas court on a different order, based on a different psychological evaluation and different board findings. So it's not a continuation. It was a separate order. Subsequent to his release, between three and four months after his release, he was stalking victims in the same manner that he had done previously. This is a man who's been convicted of rape many, many times in many jurisdictions. A felony warrant was issued for his arrest. He fled, or was attempting to flee, the jurisdiction and that warrant, telling his employer, I'm not going to go back to prison. The state police had to put down spike strips to stop him on I-5 from fleeing to California. That was the basis of the parole revocation, the subsequent order revoking parole. Now, back to the determinate versus indeterminate sentencing issue. That's an issue that here has been needlessly confused. Mr. Burnett, let me back up. Oregon has two sentencing schemes. Prior to 1989, we had a scheme known as an indeterminate sentencing scheme. This is addressed in the red brief at page 20. An indeterminate sentencing scheme is not a guideline sentencing scheme, as Oregon has now and as the federal system has now. That's been the subject of cases like Blakely. An indeterminate sentencing scheme allows the maximum sentence to be imposed under the statute delineating the crime in question. A sentencing judge has the discretion to impose whatever sentence within the statutory maximum for that crime. That was the sentencing scheme that Mr. Burnett is sentenced under for the crimes at question here. After 1989, Oregon adopted a determinate sentencing scheme that looks very much like the federal sentencing scheme. There's still a statutory maximum for the crime at issue, but the sentencing judge imposes a presumptive sentence under the guidelines. That, again, is not the sentence that Mr. Burnett has. Mr. Burnett's premise is this, that after parole was revoked, the board denied re-release, held a hearing. It's called a future disposition hearing. Denied re-release on parole, period. No more consideration of parole in Mr. Burnett's case. And ordered that he serve his entire indeterminate sentencing scheme. Indeterminate sentence under the indeterminate sentencing scheme. So that's done. He'll not be considered for parole again. He must serve until 2013, the entire length of his indeterminate sentence. Mr. Burnett is not challenging that sentence. He's not saying, and has never said, it's too long, I'm not getting credit for time served, I'm not getting good time. There's some other inherent defect in that sentence. He's never challenged that. He's not challenging the order denying re-release. He's not challenging the order of revocation. There are no more pending state court appeals that have to do with this particular issue here. In addition, I'd like to refer the court again, page 20 in the blue brief, and again to our state court of appeals opinion in Barnes v. Thompson that's cited in the blue brief. I think that explains nicely how an indeterminate versus determinate sentencing scheme and how that affects a mootness analysis. So Mr. Burnett is not challenging his sentence in any regard. All he's challenging is the board's denial of parole release in 1998. That's the only thing at issue underlying in this case. You necessarily have to find that his indeterminate sentence was somehow converted to a determinate sentence when the board denied re-release and ordered him to serve the remainder of his indeterminate sentence. That's the premise. That's it. You have to find that to avoid mootness in this case. But there's simply no proposition for that. State law says they are two different sentencing schemes and they're looked at differently, they operate differently, and mootness is affected or they affect the mootness analysis differently. Barnes talks about that in another case called Beatty v. Slater which talks about the guideline sentencing scheme. Barnes v. Thompson, Beatty v. Slater are nice cases to compare the two and how they work and why mootness can happen in an indeterminate sentencing scheme but not necessarily in a determinate sentencing scheme. And that's a key difference. In the case that he relies on in the 28J letter, Mujahid v. Daniels, that is a stellar example actually for the state of why this case is moot. In Mujahid, the petitioner was challenging his sentence. He said, I didn't get the good time that I was due. If I'm right under my theory, my sentence is shorter, unlike what's happening in Mr. Burnett's case. So if he's correct, he gets time locked off of his sentence. And the court in that case said, well, just because he's been released on supervised release, that doesn't affect the mootness analysis because the federal courts retain the authority to shorten, terminate, modify, even discharge the period of supervised release. So there actually was a remedy. There was actually an injury that Mr. Mujahid could demonstrate. That is not the case in Mr. Burnett's case. The state courts, the federal courts, have no authority to shorten that indeterminate sentence, to modify it, to order the board to release him on parole again, to reopen the revocation hearing, or anything like that, especially in light of the fact that Mr. Burnett is not challenging any of that, unlike Mr. Mujahid's case and the case that Mujahid relied on, Gunderson v. Hood. It was the same situation there. Federal sentencing guidelines are like Oregon sentencing guidelines, as explained in Beatty v. Slater, which is very different from the indeterminate sentencing. I know the difference between indeterminate and indeterminate, but I'm trying to figure out now the implication of what you said, which is that because of his threat of reoffending reasons back now in prison, the parole board has now determined that there's no further parole option. He's now in prison for the rest of the original indeterminate sentence period. There's no parole component left of that anymore. Correct, Your Honor. So in effect now he has a determinate, if you will, prison time. There's no discretion that the board is going to exercise. Correct. It's already made its determination. Correct. Why is that not analogous then to a determinate sentence in which, if one assumes that three years and eight months of his life were spent in prison, when in fact he should have been out on the streets and under parole, that there can't be a compensating reduction in the, take it back from 2013 through 2010. I think the answer to that, Your Honor, is because he's not challenging that sentence. He's not challenging that sentence. He's looking for a remedy for a past unconstitutional period of incarceration. Well, exactly. So what is his remedy? His remedy would be release on parole, but that's no longer available. So what you're saying is that the state can unlawfully hold somebody for three years and eight months, and if they bring him back in prison, he's out of luck. Too bad. I think that's what Spencer V. Chemnitz says. I think that's exactly what Spencer V. Chemnitz says. How about a damage? Do you think he has a damage remedy? I concede he probably would have a damage remedy, absolutely. But I don't think he has the right to have his lawful indeterminate sentence reduced because of any wrongdoing by the state. All right. Thank you. Thank you. Any other questions? Your Honor, just because the state decides to call the sentencing scheme indeterminate does not mean that the state can completely avoid the repercussions when it unconstitutionally incarcerates an individual for three years and eight months. What the state court did, or what the board did, when it reincarcerated Mr. Burnett and said, you will serve time until 2013, made his sentence de facto determinate. Under McQuillan, the district court can therefore grant relief. If the board wants to persist with the argument that, no, it's some kind of indeterminate sentence, the board could decide to release him at any point in time in the future. We just don't know that under Mujahid, the district court could continue with an analysis and document that his constitutional rights were violated and suggest to the board that it consider that and consider what the district court might consider to be an appropriate remedy. Under either an indeterminate sentence in light of Mujahid or a determinate sentence in light of McQuillan, there are remedies that can be fashioned for Mr. Burnett. Therefore, his case is not moved. It should be remanded to the district court for determination on the merits and an appropriate order of relief should enter. How old is Mr. Burnett? I'm sure this is in the record. I believe he was born in 1956. Doing the math, that makes him not by 50. Thank you, Your Honor. Thank you very much. Counsel, thank you both for your arguments. The case argued.
judges: Fisher, Gould, Bea